IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

VINCENT E. BOYD,

                 Plaintiff,

v.

CHRIS HEIL, TANIA REINDL, BRIAN
FOSTER, MICHAEL BAENEN, LT.
SWIEKATOWSKI, LT. VAN LANEN,
LT. VANDEWALLE, and WARDEN
ECKSTEIN,

                 Defendants.

OPINION AND ORDER

17-cv-209-wmc

*Pro se* plaintiff Vincent E. Boyd has been allowed to proceed in this lawsuit against several Green Bay Correctional Institution ("GBCI") employees on First Amendment claims that they refused to send his mail on multiple occasions and issued him several conduct reports and disciplined him in retaliation for attempting to send the mail. Now before the court is defendants' motion for partial summary judgment as to three of Boyd's retaliation claims based on his claimed failure to exhaust his administrative remedies (dkt. #27), as well as Boyd's request that the court serve his mother with discovery requests (dkt. #26). For the reasons that follow, the court will grant defendants' motion and will undertake to act as intermediary in Boyd's discovery request.

RELEVANT BACKGROUND

On October 15, 2012, defendant Chris Heil, a social worker at GBCI, issued an order restricting Boyd's ability to send mail and communicate with certain individuals. In the order, Heil reported that a search of Boyd's cell recovered multiple photographs of

Boyd's three-year-old daughter that Heil deemed provocative and sexually inappropriate. (Ex. 1001 (dkt. #29-1) 13.) Heil noted that he was aware that Boyd's mother, Linda Zdeb, had been taking, printing and mailing the photographs, and there was evidence that Zdeb had been helping Boyd circumvent prison mail and phone call policies. Heil also recounted certain state court findings related to Boyd's interactions with minor children, including that: (1) Boyd had been convicted of First and Second Degree Sexual Assault of a Child, for which he denied responsibility; (2) a state court judge had prohibited Boyd from having contact with minor females or with a victim of his crime of conviction; and (3) a juvenile court had found by clear and convincing evidence that Boyd had sexually abused his three-year-old daughter's half-brothers. Accordingly, Social Worker Heil ordered that Boyd was prohibited from: (1) communicating with Zdeb (except for written communications screened by Boyd's social worker); (2) communicating with any minors, including his victims and his victims' families; and (3) possessing any pictures, photographs, drawings or likenesses of any minors (*Id.*)

Boyd subsequently attempted to send multiple pieces of mail to Zdeb. In response, defendants not only refused to send that mail, but issued Boyd conduct reports, charging him with disobeying orders and the unauthorized use of the mail. Boyd's retaliation claims in this lawsuit relate to those conduct reports.

OPINION

I.   Exhaustion

The court granted Boyd leave to proceed on two types of First Amendment claims.

2

First, the court allowed Boyd to proceed on claims related to: (a) defendant Heil's order limiting him to written communications with his mother and defendants Heil and fellow social worker Reindl's implementation of that order; (b) defendant Heil's decision prohibiting him from sending a letter to an alleged victim; and (c) defendant Reindl's decision to prohibit him from sending out a written communication that was disparaging of her. Second, the court allowed Boyd to proceed on First Amendment retaliation claims related to five conduct reports and disciplinary actions that defendants Heil, Reindl, Swiekatowski, Van Lanen, Vandewalle, Baenen and Foster issued him for attempting to send mail.

Defendants seek partial summary judgment on exhaustion grounds. Specifically, they claim that Boyd failed to exhaust his administrative remedies with respect to his retaliation claims arising from three of the conduct reports Boyd received for the mail he tried to send Zdeb: Conduct Reports 1796229, 1796236, and 2360244.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, a prisoner also must "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *see Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Under the regulations that existed during the relevant time period, to exhaust a claim related to a conduct report, prisoners must first raise it at the disciplinary hearing and again on appeal to the warden. *See* Wis. Admin. Code § DOC 303.82(1). However, challenges to a conduct report or administrative confinement placement may also be pursued using the Inmate Complaint Review System ("ICRS"), outlined in Wis. Admin. Code Ch. DOC 310. *See* Wis. Admin. Code §§ DOC 310.05, 310.08(2)(a), (3). Prisoners may also use the ICRS to raise issues regarding rules, living conditions, staff actions affecting institution environment and civil rights. § DOC 310.08(1).

Prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The complaint may "[c]ontain only one issue per complaint, and shall clearly identify the issue." *Id.* § 310.09(e). If the institution complaint examiner rejects a grievance for procedural reasons without addressing the

merits, an inmate may appeal the rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation to the reviewing authority as to how the complaint should be resolved. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority, whose decision can be appealed by the inmate to a correctional complaint examiner ("corrections examiner"). *Id.* §§ 310.12, 310.13. The corrections examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

### A. Conduct Report 1796229

In March of 2013, Boyd attempted to send a photograph and note to Zdeb, writing that Zdeb was free to give his photograph to anyone she pleased. On March 20, 2013, Boyd received a conduct report charging him with disobeying Heil's October 15, 2012, order that prohibited him from contacting Zdeb or any minors, since it appeared Boyd intended for Zdeb to give his daughter the subject photograph. During the disciplinary hearing related to the conduct report, Boyd's position was that he could not control to whom Zdeb gave the photographs. It is undisputed that Boyd did *not* argue during the hearing that the conduct report was issued in retaliation for him engaging in constitutionally protected activity. After Boyd was found guilty of disobeying orders and given a disposition of 30 days cell confinement, he appealed the decision to the warden, arguing that his due process rights had been violated. Again, Boyd did not raise retaliation as a defense in his appeal.

Defendants argue that Boyd did not exhaust this retaliation claim because he never raised that defense during the disciplinary proceedings for this conduct report. Boyd

5

responds that he could not bring up his retaliation argument during his disciplinary hearing because he was unable to obtain certain documentary evidence that would have made his retaliation defense clear. In particular, Boyd claims that the hearing officer refused to admit his written statement that included the following:

> I assert that the restrictions on my mail and the monitoring of my mail have been implemented improperly, without cause, and in violation of my First Amendment Rights. . . Therefore, not only are the charges against me improper and unfounded, but the means and manner in which the information was gathered violates my Constitutional Rights and state law.

(Ex. 1001 (dkt. #2901) 2.) Thus, according to Boyd, prison staff prevented him from exhausting his retaliation defense. The problem with this argument is that Boyd does not explain *why* he needed this evidence to raise his concern that he received the conduct report as a punishment for engaging in protected activity. In other words, Boyd does not suggest that he was unable to speak during the hearing. In any event, the document Boyd sought to introduce did not include language that could have reasonably alerted prison officials to his retaliation defense, since Boyd only argued that his mail restriction violated his First Amendment rights generally, not that he was being punished *because* he was exercising those rights.

Boyd also argues that he adequately exhausted his retaliation claim when he appealed the results of the conduct report hearing. However, in his appeal, Boyd again argued that the restrictions on his mail violated his First Amendment rights generally; he did not raise the concept of retaliation. While there is significant overlap between Boyd's First Amendment claim related to the restriction on his mail and his retaliation claim related to the conduct report received for attempting to send the mail, Boyd still needed

to identify *both* the protected conduct that caused the retaliation *and* the retaliatory act to adequately exhaust his retaliation claim. *Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017); *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008).

Nevertheless, Boyd's defense during disciplinary hearing and appeal of Conduct Report 1796229 was that the restrictions on his mail violated his constitutional rights, and his written statement that was supposedly wrongfully excluded from the record also failed to include language suggesting that the conduct report was issued to punish him for sending mail in violation of Heil's order. While Boyd still may proceed on his First Amendment claim related to these mail restrictions generally, defendants have carried their burden to prove that Boyd did not exhaust his administrative remedies with respect to the retaliation claim related to Conduct Report 1796229.

### B. Conduct Report 1796236

On April 8, 2013, Boyd next received Conduct Report 1796236, which again charged him with disobeying orders and unauthorized use of mail. The conduct report alleged that Boyd tried to send Zdeb a letter saying that a picture would be arriving without a letter enclosed and that Zdeb would receive all his mail. Prison staff interpreted this letter as Boyd's attempt to circumvent Heil's October 15, 2012, order again, and to avoid having his mail screened by his social worker. During the disciplinary hearing for this conduct report, Boyd disputed that characterization of his statements, but did not raise retaliation as a defense.

Boyd claims that during the disciplinary hearing and in his appeal, he argued that Social Worker Reindl had "jumped to conclusions." It is fair to say that Boyd's arguments during the hearing alerted prison officials to his belief that Reindl was incorrect about the communication Boyd was attempting to send, but Boyd's defense still does not include any allegations suggesting that Reindl was actually motivated by an intent to punish him for engaging in constitutionally protected activity. As such, the prison officials handling this conduct report and appeal would not have had a reasonable opportunity to investigate Reindl's *intent*, only whether her assessment of his communication to Zdeb violated the terms of Heil's order. *See Malone v. Clark*, No. 04-C-229-C, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004) (finding plaintiff failed to exhaust a retaliation claim related to a conduct report where grievance neither referenced retaliation nor challenged the defendant's motive in issuing a conduct report). Accordingly, the court concludes that while Boyd adequately raised his concerns about the mail *restriction*, he did not exhaust his retaliation claim related to Conduct Report 1796236.

### C. Conduct Report 2360244

Finally, defendants seek judgment on Boyd's retaliation claim related to Conduct Report 2360244. On October 14, 2013, Boyd received Conduct Report 2360244, also charging him with disobeying orders and unauthorized use of the mail. This conduct report alleged that Boyd tried to send Zdeb a crumpled mass of toilet paper that resembled the shape of a rose, and that Boyd used his saliva on the toilet paper.

8

Lieutenant Van Lanen held a disciplinary hearing on October 29, 2013, and afterwards wrote that Boyd claimed that his social worker told him to deliver the origami rose to the property department to send. (Ex. 1003 (dkt. #29-3) 2.) Van Lanen also wrote that Boyd admitted that he made the rose by licking the paper. Boyd was found guilty of both infractions, and he was punished to 240 days of disciplinary separation. Boyd appealed that disposition to the warden, asking that the 240-day punishment be reduced because licking the tissue did not warrant such a severe sentence. Again, Boyd did not bring up retaliation specifically. The warden modified the disposition, reducing the time in disciplinary separation to 180 days.

In opposition, Boyd submits an affidavit disputing Van Lanen's version of the hearing. Specifically, Boyd claims that when Lieutenant Van Lanen came to Boyd's cell door, he told Van Lanen that "both social worker Tania Reindl and Chris Heil, were retaliating against me by issuing these bogus conduct reports anytime I attempted to send anything other than a handwritten letter to my mother." (Boyd Decl. (dkt. 31) ¶ 5.) Boyd further claims that Van Lanen did not accurately record his statement related to that defense. (*Id.* ¶ 8.) To the extent Boyd's averments related to what he told Van Lanen create a dispute of fact, it is of no consequence, since Boyd does not suggest that he then attempted to raise retaliation in his appeal to the warden. *See* Wis. Admin. Code § DOC 303.82(1).

Boyd also argues that he exhausted this claim through the ICRS process, specifically in two, different inmate complaints, GBCI-2013-21551 and GBCI-2013-22348. While Boyd did pursue inmate complaints related to this conduct report, he again did *not* raise

9

retaliation in either inmate complaint. In GBCI-2013-21551, Boyd complained that the flower should have been sent; he did not challenge issuance of the conduct report, much less allege that the conduct report was issued to punish him. In GBCI-2013-22348, Boyd argued that the restriction on his mail violated his First Amendment rights. Certainly that challenge served to exhaust Boyd's First Amendment claim related to the *restriction* on his mail, but not a separate retaliation claim.

In summary, it is undisputed that Boyd failed to argue that any of these conduct reports were issued in retaliation for him engaging in protected conduct during disciplinary hearings associated with each of these three conduct reports. Since defendants carried their burden to prove that Boyd failed to exhaust his administrative remedies with respect to his First Amendment retaliation claims arising from Conduct Reports 1796229, 1796236, and 2360244, the court will grant their motion for partial summary judgment and dismiss these retaliation claims without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

## II. Boyd's Discovery Requests (dkt. #26)

Boyd previously submitted a motion asking to contact Zdeb as a witness, explaining that because of the DOC's current order restricting his mail as outlined above, he cannot collect evidence from her. On July 17, 2019, the court directed Boyd to file with the court the specific written discovery requests he would like to serve on Zdeb. In doing so, Boyd submitted Zdeb's contact information in Tennessee, along with proposed interrogatories and document requests. Having received no objection to the proposed discovery request,

the court will proceed to mail serve them on Ms. Zdeb with strict instructions to respond *only* to the court so as not to run afoul of any GBCI restriction. Should she do so, the court will then file her responses for both parties to see.

ORDER

1) Defendants' motion for partial summary judgment is GRANTED. Plaintiff Ivan Boyd's First Amendment retaliation claims related to Conduct Reports 1796229, 1796236 and 2360244 are DISMISSED without prejudice.

2) The clerk of court is directed to mail serve Boyd's discovery requests and a copy of this order to Linda Zdeb. Zdeb shall respond within 30 days of her receipt of the requests by sending her responses to Boyd's questions directly to the court at 120 North Henry Street, Room 320, Madison, WI 53703. Zdeb shall not send her responses directly to Boyd.

3) Since defendant Van Lanen's only involvement in the allegations comprising plaintiff's claims was with respect to finding plaintiff guilty of the charges in Conduct Report 1360244, Van Lanen is DISMISSED without prejudice.

Entered this 13th day of January, 2020.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge